IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID MARTINEZ, individually and on behalf of others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> QUICK DELIVERY SERVICE, INC. and RANDALL SEILER, <br><br> Defendants. | Case No. 18-cv-7651 |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff, on behalf of himself and others similarly situated, as a Complaint against Defendants, alleges the following:

### NATURE OF THE CASE

1. Defendants Quick Delivery Service, Inc. ("Quick Delivery Service") and Randall Seiler ("Seiler") employed Plaintiff as a delivery driver but failed to pay him and other delivery drivers overtime premium wages for hours worked in excess of forty in a workweek. It also paid Plaintiff and other drivers far less than state and federal minimum wage. Plaintiff's claims are filed under the Fair Labor Standards Act ("FLSA") as a collective action pursuant to 29 U.S.C. §216(b) on behalf of himself and other, similarly situated workers. Plaintiff also asserts class-action claims under the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL"). As a remedy for the wage violations, Plaintiff seeks recovery of his unpaid wages, liquidated damages, state law statutory penalties, pre- and post-judgment interest and attorney's fees and costs.

2. Additionally, when Plaintiff left Quick Delivery Service and began delivering Zimmer medical products for a competitor, Quick Delivery Service made a baseless threat to sue Zimmer and the competitor for breach of contract and tortious interference with contract. As a result, Plaintiff was rendered unemployed for several months and lost out on a lucrative job opportunity.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331 (federal question) and 29 U.S.C. §216(b) (FLSA) and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because the state law claims are so closely related to the federal claims as to form a single Article III case.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants both reside in this district and a substantial part of the events and omissions giving rise to the claims took place in this district.

## PARTIES

5. Plaintiff worked for Defendants as a delivery driver in 2017 and 2018.

6. Defendant Quick Delivery Service is an Illinois corporation with its principal place of business in Schaumburg, Illinois. It is a transportation company specializing in small package delivery.

7. During the past three years, Seiler was the president of Quick Delivery Service. He had the authority to hire and fire Quick Delivery Service employees; establish the terms and conditions of their employment; dictate company policies; and direct and supervise Plaintiff's and similarly situated employees' daily work.

8. During the past three years, Quick Delivery Service was an enterprise as defined in Section 3(r)(1) of the Fair Labor Standards Act, 29 U.S.C. §203(r)(1). It was an enterprise engaged in commerce or in the production of goods for commerce and had employees handling or working on goods or materials that were moved in or produced for commerce within the meaning of Section 3(s)(1)(A) of the FLSA, 29 U.S.C. §203(s)(1)(A).

9. At all times relevant, Quick Delivery Service and Seiler were Plaintiff's "employer" as defined in the FLSA, 29 U.S.C. § 203, and the IMWL, 820 ILCS §105/3(c).

10. Plaintiff's written consent to sue pursuant to 29 U.S.C. §216(b) is attached to this Complaint as Exhibit 1.

## FACTUAL ALLEGATIONS

### Unpaid Minimum Wages and Unpaid Overtime

11. Plaintiff worked for Quick Delivery Service delivering packages that the company assigned to him throughout the Greater Chicagoland area.

12. Plaintiff worked 35-45 hours per week for Quick Delivery Service, driving his own vehicle during the last several months of his job.

13. After reimbursing Plaintiff for the mileage on his vehicle, Defendants often paid Plaintiff as little as $2.00 to $4.00 per hour.

14. Defendants also never paid Plaintiff overtime premiums when he worked over forty hours in a workweek.

15. For example, for the workweek ending March 4, 2018, Plaintiff worked for Defendants for approximately 40 hours and drove 1,098 miles while performing work for Defendants.

16. During that workweek, Defendants paid Plaintiff $753.82, of which $598.41 was paid to reimburse Plaintiff for his vehicle expenses. As a result, Defendants paid Plaintiff just $155.41 for 40 hours of work. *See* Ex. 2 (March 9, 2018 Paycheck Stub).

17. As another example, during the workweek ending April 15, 2018, Plaintiff worked for Defendants for approximately 45 hours and drove 1,386 miles while performing work for Defendants.

18. During that workweek, Defendants paid Plaintiff $946.90, of which $755.37 was paid to reimburse Plaintiff for his vehicle expenses. As a result, Defendants paid Plaintiff $191.53 for 45 hours of work. It also paid him no overtime premiums for hours worked in excess of forty in a workweek. *See* Exhibit 3 (April 20, 2018 Paycheck Stub).

19. Quick Delivery Service employees who drove their own vehicles were all subject to the same unlawful pay practice as Plaintiff; that is, Defendants frequently paid them less than the minimum wage and did not pay them one-and-one-half times their regular rate of pay for all hours worked in excess of 40 in a single workweek.

## **Tortious Interference with Prospective Business Advantage**

20. On July 31, 2018, Plaintiff resigned his employment with Quick Delivery Service, and he began performing deliveries for another delivery company, Titanium Courier.

21. The work that Plaintiff performed for Titanium Courier was similar to the work that he performed for Quick Delivery Service, in that he delivered Zimmer Biomedical products.

22. In July 2018, Quick Delivery Service and Zimmer Biomedical had a formal agreement that Zimmer Biomedical would not hire Quick Delivery Service's employees for one year after Quick Delivery Service employees left the company.

23. When Quick Delivery Service learned that Plaintiff planned to work for Titanium, it threatened to sue Zimmer Biomedical for breaching their agreement, even though Plaintiff was not working as a Zimmer Biomedical employee and was never going to work as a Zimmer Biomedical employee.

24. Additionally, Quick Delivery Service threatened to sue Titanium for intentional interference with contractual relations by hiring Plaintiff.

25. Zimmer Biomedical did not want to pay attorneys to litigate the issue, so it prevented Plaintiff from performing deliveries for the company. Titanium terminated its relationship with Plaintiff for the same reason.

26. Quick Delivery Service had absolutely no legal basis to sue Zimmer Biomedical for permitting Plaintiff to perform deliveries for the company. Additionally, Quick Delivery Service had absolutely no legal basis to sue Titanium for contracting with Plaintiff.

27. Because of Quick Delivery Service's baseless threats of litigation against Zimmer Biomedical and Titanium, Plaintiff was rendered unemployed for several months and lost substantial wages.

## Collective and Class Allegations

28. Plaintiff brings the claims set forth in Count I, alleging violations of the FLSA, as a collective action on behalf of himself and an **"FLSA Class,"** consisting of all Quick Delivery Service employees who worked as couriers for the company and drove their own vehicles between November 19, 2015 and the present.

29. Plaintiff brings his IMWL claims, as set forth in Count II, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all other all Quick Delivery

Service employees who worked as couriers for the company and drove their own vehicles between November 19, 2015 and the present. ("**the IMWL Class**").

30. The classes defined above satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b).

31. The IMWL class is so numerous and geographically dispersed that joinder of all members is impracticable, and the disposition of their claims in a class action will provide substantial benefits to both the parties and the Court. Plaintiff believes that the class includes at least fifty former and current Quick Delivery Service employees.

32. Common questions of law and fact predominate over individual issues affecting only individual class members. The common questions of law and fact include, among others, the following:

    a. Whether Defendants implemented a policy of denying Plaintiff and other class members overtime wages due and owing under the FLSA and IMWL for hours worked in excess of forty in a workweek;

    b. Whether Defendants implemented a policy of denying Plaintiff and other class members minimum wages due and owing under the FLSA and IMWL;

33. Plaintiff will fairly and adequately protect the interests of all class members. Plaintiff is a member of the FLSA Class and the IMWL Class.

34. Plaintiff's claims are typical of the claims of all class members. Plaintiff's interest in obtaining monetary relief for Defendants' violations of the class members' rights are consistent with and are not antagonistic to those of any person within the classes.

35. Plaintiff has retained counsel competent and experienced in complex and class action litigation.

36. A class action is superior to other methods for the fair and efficient adjudication of the controversy alleged in this Complaint. Class action treatment will permit a large number of

similarly situated persons to prosecute their modest, common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would require.

37. The Court is not likely to encounter any difficulties that would preclude it from maintaining this case as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. Individualized litigation also would present the potential for inconsistent or contradictory judgments.

## COUNT I
## FAIR LABOR STANDARDS ACT, COLLECTIVE ACTION
## UNPAID OVERTIME

38. Plaintiff re-alleges and incorporates the allegations of paragraphs 1-37 above as if fully set forth herein.

39. The Fair Labor Standards Act requires that employers pay overtime premium wages of one and on-half times the regular rate of pay to non-exempt employees for all hours worked in excess of forty in a single workweek. 29 U.S.C. §207(a).

40. The Fair Labor Standards Act requires that employers pay their non-exempt employees at least $7.25 for all hours worked. 29 U.S.C. §206(a).

40. At all times relevant, Plaintiff and similarly situated workers were non-exempt drivers entitled to one and one-half times their regular rate of pay for all hours worked in excess of forty in a single workweek.

41. At all times relevant, Plaintiff and similarly situated workers regularly and routinely worked for Defendants in excess of forty hours in a single workweek.

7

42. Defendants failed to pay Plaintiff and similarly situated workers their overtime premium wages of one and one-half times their regular rate of pay for all hours in excess of forty in a single workweek.

43. At all times relevant, Plaintiff and similarly situated workers were non-exempt drivers entitled to $7.25 per hour for all hours worked.

44. Defendants failed to pay Plaintiff $7.25 per hour for all hours worked.

45. Defendants' FLSA violations were willful.

WHEREFORE, Plaintiff prays that this Court enter judgment in his favor, and in favor of all similarly situated workers who file written consents to sue pursuant to 29 U.S.C. §216(b), and against Defendants, jointly and severally, on Count I, and:

a. Award Plaintiff and similarly situated workers an amount equal to their unpaid overtime and minimum wages plus an additional and equal amount as liquidated damages;

b. Order Defendants to pay the costs of bringing this action, including reasonable attorney's fees and litigation expenses;

c. Order Defendants to pay post-judgment interest; and

d. Grant such other and further relief as the Court deems just and proper.

### COUNT II
### ILLINOIS MINIMUM WAGE LAW, CLASS ACTION
### UNPAID OVERTIME

46. Plaintiff re-alleges and incorporates the allegations of §§ 1-37 above as is fully set forth herein.

47. The Illinois Minimum Wage Law mandates that employers pay covered employees overtime wages at a rate of one and one-half time their regular rate of pay for all hours worked in excess of forty hours in a single workweek. 820 ILCS 105/4a.

48. Defendants violated 820 ILCS 105/4a by failing to pay Plaintiff and other similarly situated drivers the mandated overtime premium wages for all hours worked in excess of forty hours in a single workweek.

49. The Illinois Minimum Wage Law mandates that employers pay covered employees at a rate of $8.25 per hour for all hours worked. 820 ILCS 105/4.

50. Defendants violated 820 ILCS 105/4 by failing to pay Plaintiff $8.25 per hour for all hours worked.

WHEREFORE, Plaintiff prays that this Court enter judgment in his favor against Defendants, jointly and severally, on Count II and:

a. Award Plaintiff and other class members an amount equal to their unpaid overtime and minimum wage compensation and a penalty of 2% of the unpaid overtime and minimum wages per month for the length of the violation in accordance with 815 ILCS 105/12;

b. Award Plaintiff and other class members pre-judgment and post-judgment interest;

c. Order Defendants to pay the costs of bringing this action, including reasonable attorneys' fees and expenses as provided by 820 ILCS 105/12;

d. Grant such other and further relief as the Court deems just and proper.

## COUNT III
## TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE
**Against Defendant Quick Delivery Service**

51. Plaintiff re-alleges and incorporates the allegations of §§ 1-36 above as is fully set forth herein.

52. In July 2018, Plaintiff stopped working for Quick Delivery Service and started working for Titanium as a delivery driver because Titanium offered him a better wage.

53. To retaliate against Plaintiff and punish Titanium, Quick Delivery Service made baseless threats of litigation against Zimmer and Titanium. As a result of these baseless threats, Titanium fired Plaintiff and rendered him unemployed.

WHEREFORE, Plaintiff prays that this Court enter judgment in his favor against Quick Delivery Service on Count III and:

    a. Award Plaintiff his lost wages;

    b. Award Plaintiff pre-judgment and post-judgment interest;

    c. Award Plaintiff compensatory damages for emotional distress and humiliation;

    d. Award Plaintiff punitive damages;

    d. Grant such other and further relief as the Court deems just and proper.

54. Plaintiff demands trial by jury on all issues so triable.

Dated: November 19, 2018                      Respectfully submitted,

                                              /s/Christopher J. Wilmes
                                              One of the Attorneys for the Plaintiff

Matthew J. Piers
Christopher J. Wilmes
HUGHES, SOCOL, PIERS, RESNICK & DYM, LTD.
70 W. Madison St., Suite 4000
Chicago, IL 60602
312-580-0100
mpiers@hsplegal.com
cwilmes@hsplegal.com